Continental National American Group (Valley Forge Insurance Company), Plaintiff-Appellee, *v.* Al Vaicunas *et al.,* Defendants-Appellants.

(No. 56994;

First District (4th Division)—February 26, 1975.

Erwin M. Pearl Associates, Ltd., of Chicago (Erwin M. Pearl, of counsel), for appellants.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (D. Kendall Griffith, Dennis J. Horan, and Joseph S. King, of counsel), for appellee.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

This action arose out of an automobile accident which occurred on October 31, 1968, when a 1961 Buick owned by Roger Green and operated by Jeffery Vaicunas collided with a vehicle driven by Elaine Wise and occupied by Nelson Wise. On February 14, 1969, Nelson and Elaine Wise filed an action against Jeffery Vaicunas and Roger Green for injuries arising out of the collision. Jeffery Vaicunas claimed coverage under an automobile insurance policy issued by the plaintiff to his father, Al Vaicunas. Plaintiff defended Jeffery Vaicunas under a reservation of rights and filed this action for a declaratory judgment to resolve the rights and liabilities of the parties under the terms of the policy. The court ruled in favor of the plaintiff, and the defendants filed this appeal.

There is no factual dispute. The automobile insurance policy involved in this controversy was issued by plaintiff to defendant, Al Vaicunas, on July 15, 1966, and was in effect on October 31, 1968, when the accident occurred. It covered two automobiles owned by Al Vaicunas: a 1963 Chevrolet and a 1964 Ford. The policy also provided coverage to relatives of the policyholder who operated a nonowned automobile. Under the terms of the policy, a nonowned automobile is defined as:

> "* * * [A]n automobile or trailer not owned by or *furnished for the regular use* of the named insured or any relative * * *."
> (Emphasis supplied.)

Jeffery Vaicunas, the 19-year-old son of Al Vaicunas, was the only

person who testified at the trial. He stated that he had obtained a 1961 Buick from Roger Green approximately 2 weeks before the accident in question. Jeffery stated that he obtained the car to get back and forth to work at O'Hare Field, but also acknowledged driving it to places other than his job. He drove the Buick approximately 8 working days prior to the accident. Jeffery paid no money to Green for the car and did not receive title to it. According to Jeffery, Roger Green told him that he could use the car for as long as he needed it.

On October 31, 1968, Jeffery Vaicunas was operating the 1961 Buick when it collided with a vehicle occupied by Elaine and Nelson Wise. At the time of the accident, Jeffery was in the process of stopping at a friend's house and proceeding to work. The Buick was totaled out in the accident, and Jeffery subsequently claimed coverage under the nonowned automobile provision of his father's insurance policy.

A hearing was held before the Honorable Edward J. Egan sitting without a jury on the plaintiff's complaint for declaratory judgment. At the conclusion thereof, the trial court found that the Buick was "furnished for the regular use" of Jeffery Vaicunas, that there was no restriction by Roger Green on the time or place of use of the automobile, and that the claimants under the policy have the burden of proof on the question of coverage. The court then entered its judgment that the plaintiff is not obligated under the policy to defend Jeffery Vaicunas or Roger Green, nor is it obligated to pay any judgment that may be entered against Roger Green or Jeffery Vaicunas. We affirm.

In this appeal, defendants ask that the judgment of the court be vacated and the cause remanded to the trial court with a direction that it find that plaintiff's insurance policy does cover Jeffery Vaicunas for the collision of October 31, 1968. They contend that the 1961 Buick was furnished to Jeffery Vaicunas only for the limited purpose of getting to and from his place of employment and not for his regular use. In support of their position, the following points are argued by the defendants:

1. The court's finding that the automobile was for the regular use of Jeffery Vaicunas is against the manifest weight of the evidence;
2. Jeffery Vaicunas' use of the furnished automobile was infrequent and casual;
3. Plaintiff failed to sustain its burden of proof that the automobile was furnished to Jeffery Vaicunas for his regular use;
4. The court's ruling failed to adhere to the principle that policies of insurance will be strictly construed in favor of the insured in order to afford coverage; and
5. The court erred in failing to adhere to the policy of this state that courts should protect the rights of minors.

The first question we shall discuss is whether the court's finding that the 1961 Buick was furnished for the regular use of Jeffery Vaicunas is against the manifest weight of the evidence. Appellants contend that Jeffery Vaicunas' use of the automobile was infrequent and casual. After reviewing the record in this case, we find that the court's finding is supported by the manifest weight of the evidence.

The record shows that Jeffery Vaicunas obtained the automobile from Roger Green for the purpose of driving to and from his place of employment. However, Roger Green placed no limitation on the use of the car and told Jeffery that he could use it as long as he needed it. The automobile was available for Jeffery's use whether he used it or not. During the period that he had the car, Jeffery drove it to work and back every day for a week and a half. In addition, Jeffery drove the automobile to places other than work. He drove it on Saturdays and Sundays when he did not work.

The cases which have dealt with the question of whether an automobile is "furnished for the regular use" of an insured support the conclusion we have reached. In *Rodenkirk v. State Farm Mutual Automobile Insurance Co.* (1945), 325 Ill.App. 421, 60 N.E.2d 269, a case of first impression on this question in Illinois, the court explained the rationale underlying the exclusion from coverage of a nonowned automobile furnished for the regular use of the insured as follows, at page 433:

> "* * * [T]he exclusion of cars furnished for regular use to the insured or a member of his household would seem to indicate the intention of the company to protect itself from a situation where an insured could pay for one policy and be covered by the insurance in driving any car that he decided to use whether owned by him or members of his family, or cars that had been furnished for his regular use; in other words, cars under his control that he could use at will and might use often. Without some such exclusion it is obvious that the company might lose premiums and also that the hazard under the insurance would be increased. It is evident that the purpose on the part of the company in extending the driver's regular insurance without the payment of any additional premiums would apply to the occasional driving of cars other than his own, but would be inapplicable to an automobile furnished to the insured for his regular use."

The facts in *Rodenkirk* may be briefly summarized as follows: The plaintiff had a State Farm insurance policy which included coverage for his use of "other" automobiles not furnished for his regular use. Upon entering military service, the fiance of the plaintiff's daughter left his automobile with the daughter and the members of her family to keep

in repair and use as they saw fit. Plaintiff was involved in an accident while driving the automobile and sought coverage under the "regular use" provision of the family automobile insurance policy. In holding that the automobile was furnished for plaintiff's regular use, thus precluding recovery under the policy, the court stated at page 437:

> "We think he [Rodenkirk] could have used the car at any time after March 21, 1941, as Meyer, the owner of the car, told Rodenkirk that he was to keep the car up and could use it as he saw fit. Meyer's giving the car to Rodenkirk to use it as he saw fit would necessarily mean that the car was furnished to Rodenkirk for his regular use."

Similarly, in the case before us, Roger Green furnished the automobile in question to Jeffery Vaicunas without any limitations upon its use. Jeffery was told that he could use the car for as long as he needed it, and the facts showed that he did drive the car to places other than his place of employment.

A more recent case on the question of whether an automobile is furnished for the regular use of an insured is *Franey v. State Farm Mutual Automobile Insurance Co.* (1972), 5 Ill.App.3d 1040, 285 N.E.2d 151. The insured, an employee of the State of Illinois, was injured in an accident while returning to work from his lunch break in a State-owned automobile. The facts showed that the insured had been employed as a watchman or guard by the State for a period of 6 months prior to the accident. He drove to work in his private car, parked it, used the State car during his 8-hour workday, drove it home for lunch, and returned home after work in his private car. The court, holding that the State-owned car was "furnished for the regular use" of the insured, stated at page 1043:

> "The circumstances of the particular manner of use, where a vehicle is alleged to have been furnished for regular use, must be examined. In the particular instance involved, the owner of one automobile was provided another automobile which, according to the evidence, he used regularly in his work and regularly for his own purpose in driving the vehicle home for lunch, the latter use occurring at a particular interval of time and within a relatively well defined limit of travel. This falls clearly within the type of situation which has been considered to be a regular use of the named insured."

Thus, in the instant case, the fact that Jeffery Vaicunas obtained the 1961 Buick for the stated purpose of commuting to and from work does not establish in itself that the car was for a limited and temporary purpose only, especially where the facts showed that he also used the

car for purposes other than commuting to and from work and the automobile was available for his use at any time and for any purpose.

■■ In view of the foregoing, we hold that the court's finding that the automobile was furnished for the regular use of Jeffery Vaicunas is supported by the manifest weight of the evidence. The evidence does not support defendants' contention that Jeffery Vaicunas' use of the automobile was infrequent and casual.

■■ The court also correctly found that the claimants under this automobile insurance policy have the burden of proof on the question of coverage. (*Hays v. Country Mutual Insurance Co.* (1963), 28 Ill.2d 601, 192 N.E.2d 855; *Soukup v. Halmel* (1934), 357 Ill. 576, 192 N.E. 557.) In *Harter v. Country Mutual Insurance Co.* (1959), 20 Ill.App.2d 413, 156 N.E.2d 243, the executors brought an action to recover death benefits allegedly due under an insurance policy issued by the defendant. The benefits were payable in the event of injury sustained while riding in a private passenger automobile not owned by, registered in the name of, or furnished for the regular use of any insured. The parties agreed that the only issue in the case was whether the nonowned automobile was furnished for the regular use of the claimants. The court stated at pages 419-20:

> "The burden of proving that the 1956 Packard was not furnished to the Harters for their regular use rested upon plaintiffs [*i.e.*, the claimants]. That burden was not shifted by defendant's answer alleging that the car was furnished for the regular use of decedent. Soukup v. Halmel, 357 Ill. 576."

In view of the foregoing, we find no merit in the appellants' contention that the burden of proof shifted to the plaintiff to establish that the automobile was furnished for the regular use of the insured. No evidence of an express limitation on Jeffery's use was produced by the defendants. We hold that the trial court correctly found that the defendants had the burden to establish coverage by a preponderance of the evidence.

■■ Defendants' next argument is that the terms of the policy in question should be strictly construed in order to afford coverage to the insured. However, the principle upon which they rely is not applicable unless there is an ambiguity in the language of the provision under which coverage is claimed. We agree with the finding of the trial court that the policy provision at issue in this case is not ambiguous.

Courts have construed language similar to that in this insurance policy on numerous occasions and found it unambiguous. In *State Farm Mutual Automobile Insurance Co. v. Berke* (1970), 123 Ill.App.2d 455, 258 N.E.2d 838, the claimant relied upon a provision of the automobile liability insurance policy which excluded coverage of an automobile "fur-

nished or available for the frequent or regular use" of the insureds. Finding no ambiguity in the language of the policy, the court stated at page 460:

> "As an abstract principle of law, we agree with the further contention of the appellants that ambiguous clauses in a policy of insurance should be construed most favorably to the insured. Marshall v. Metropolitan Life Ins. Co., 337 IllApp 498, 509, 86 NE2d 262. However, language in the policy will not be perverted to create an ambiguity where none exists. Lakatos v. Prudence Mut. Cas. Co., 113 IllApp2d 310, 316, 252 NE2d 123; O'Daniell v. Missouri Ins. Co., 24 IllApp2d 10, 14, 164 NE2d 78. We find no ambiguity in the pertinent sections of the policy before us and therefore conclude that the judgment of the trial court is correct and should be affirmed."

Similarly, in *Harter v. Country Mutual Insurance Co.* (1959), 20 Ill. App.2d 413, 156 N.E.2d 243, the court considered the meaning of the term, "furnished for the regular use" of an insured, and found no uncertainty as to its meaning. The court stated at pages 420-21:

> "We are unable to agree with plaintiff's contention that there is an uncertainty as to the meaning of the language of the policy. It plainly states that an insured, injured while riding in any other car furnished for the "regular use" of such person, shall not be entitled to certain benefits payable under the policy. Taken in its plain, ordinary sense, this language can only mean that the insured is not covered by the policy on the insured vehicle if he is injured in some other car which he can regularly use. The policy does not state that the exclusion applies only in case the other car is used on any particular number of occasions. On the contrary, an insured, upon reading the same, could readily understand that the protection thereunder did not extend to every car in which he might be riding, but only to those which he did not have the right to use regularly. The factor determining whether the car used comes within the exclusion clause is whether such car is furnished for the regular use of the insured. In such situation, the rule that ambiguous language in an insurance contract shall be construed in favor of the insured has no application. Pioneer Life Ins. Co. v. Alliance Life Ins. Co., 374 Ill. 576."

In this case, the provision challenged by appellants is the same as that construed by the foregoing authorities, where no ambiguity was found. In view of the lack of ambiguity of the provision, we hold that appellants' contention urging strict construction of the insurance provision in question to afford coverage is without merit.

■■ Finally, appellants contend that, because Jeffery Vaicunas was 19 years of age on the day of the accident, the court should have adhered to the policy of this state of protecting the rights of minors by affording coverage to Jeffery Vaicunas. Again, this general principle does not apply to the facts in this case. The insurance policy in question was issued by plaintiff to Jeffery's father, Al Vaicunas, and it expressly covered two owned automobiles. The policy also provided coverage to any relative residing with the insured who operated a nonowned automobile not furnished for the regular use of the insured.

The cases cited by appellants in support of this argument do not support the conclusion which they urge us to adopt. In *Zozaski v. Mather Stock Car Co.* (1942), 312 Ill.App. 585, 38 N.E.2d 825, a father with no legal right or control over his son's property, attempted to contract away his son's right to wages, and in *Swiney v. Womack* (1931), 343 Ill. 278, 175 N.E. 419, a minor was duped into entering several transactions with an older and more sophisticated adult. Both of these cases illustrate that a court will alter a contract to protect the rights of a minor of whom unfair advantage has been taken. In the present case, however, there is nothing in the record to suggest that plaintiff took advantage of Jeffery Vaicunas or unlawfully exercised control over his property. Thus, we must conclude that the authorities relied upon by appellants have no application to the facts before us.

In view of the foregoing, we are convinced that the trial court's findings were correct. Accordingly, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

DIERINGER, P. J., and BURMAN, J., concur.