EDWARD KNACK, Plaintiff-Appellant, v. MABEL P. PHILLIPS et al., Defendants-Appellees.

Second District   No. 84—0582

Opinion filed June 14, 1985.

Charles A. Cohn and Erwin Cohn, both of Cohn & Flynn, of Chicago, for appellant.

Leo J. Sullivan, of Sullivan, Smith, Hauser & Noonan, of Waukegan, for appellees.

JUSTICE REINHARD delivered the opinion of the court:

Plaintiff, Edward Knack, appeals from an order in favor of defendant, Allstate Insurance Company (Allstate), in a declaratory judgment action brought to determine whether Allstate's automobile liability policy issued to Mabel Phillips extends to her daughter, Pamela Phillips, who was driving an uninsured motor vehicle owned by Christopher Dombek when it collided with the motorcycle driven by plaintiff.

The issues for our review are: (1) was the nonowned vehicle driven by Pamela Phillips at the time of the accident available or furnished for her regular use pursuant to the "regular use" clause in the Allstate policy issued to her mother, thereby excluding her from coverage under the policy for this accident; and (2) whether the trial court erred in placing the burden of proof on the plaintiff, rather than the insurer, Allstate.

Plaintiff's complaint for declaratory judgment against Allstate, Mabel Phillips and her daughter, Pamela Phillips, and Christopher Dombek alleges that Allstate issued a policy of automobile insurance to Mabel Phillips; that on April 16, 1983, plaintiff was involved in a collision with a vehicle driven by Pamela Phillips and owned by Christopher Dombek; that at the time, Pamela was a member of the household of Mabel Phillips; and that Allstate had denied coverage and an actual controversy existed whether Pamela was covered under the policy. Only Allstate filed an answer, and while admitting the allegations of the complaint, asserted as an affirmative defense that the vehicle Pamela was driving was a nonowned vehicle furnished for her regular use by Christopher Dombek, so that under the terms of the Allstate policy issued to her mother she was not afforded coverage for this accident.

The Allstate policy clause in issue here stated:

"INSURED AUTOS

* * *

(4) A non-owned *auto* used by *you* or a *resident* relative with the owner's permission. This *auto* must not be available or furnished for the regular use of an insured person."

The case was submitted to the trial judge upon the evidence depositions of Pamela Phillips and Christopher Dombek, together with the insurance policy in question. Dombek's deposition testimony, in essence, was that he had purchased a 1979 Chevrolet Monza in mid-March 1983, while stationed in the Navy in San Diego, California. He was thereafter assigned to the Great Lakes Naval Station and arrived on March 29, 1983. His fiancee, Pamela Phillips, at that time was at-

tending Judson College in Elgin and resided on campus. When not attending school, Pamela lived with her mother in New York. Dombek lived at the base and kept the car there from March 29 until the Easter weekend, April 3. Then he allowed Pamela to keep the car during the week, and during the weekend he would use the vehicle. He gave Pamela permission to use the car to go back and forth to her part-time job and to pick him up on the weekends. The main reason she had the car was to drive back and forth to work in St. Charles, although she made some limited personal use of the car. She had used the car for approximately two weeks before the accident on April 16, 1983, a Saturday. Pamela was on her way to meet Dombek when the accident occurred. He was not insured at the time of the accident.

Pamela Phillips stated in her deposition that she was 18 years old and lived with her mother in New York. In March and April 1983, she was a student at Judson College in Elgin. Following the Easter weekend, Dombek loaned her his automobile. She had the car the week before the accident and possibly the week before that, but not on the weekends. She used it to go back and forth to work, but not every day, as she sometimes car-pooled. She used it on occasion for a personal errand. There was no formal arrangement of how long she would continue to use the car during the week. She signed a statement given to a representative of Allstate that she started using the car on a regular basis on March 29. Pamela explained in her deposition that she really didn't understand the term "regular basis," and she did not begin keeping the car on March 29.

The trial judge found that plaintiff had not met his burden to prove by a preponderance of the evidence that the Dombek automobile used by Pamela was not available or furnished for her regular use, and therefore no coverage was afforded Pamela under the Allstate policy for this accident.

As the evidence before the trial court consists entirely of depositions and documentary evidence, the appellate court makes an independent decision on the facts, and our review is not limited to the usual manifest weight of the evidence standard. *Antioch Missionary Baptist Church v. Rosewell* (1983), 119 Ill. App. 3d 981, 457 N.E.2d 500; *Delasky v. Village of Hinsdale* (1982), 109 Ill. App. 3d 976, 980, 441 N.E.2d 367.

■ We address first plaintiff's contention that the trial court erred when it placed the burden of proof on plaintiff to show that Pamela's use of the nonowned automobile did not fall within the "regular use" exception to the Allstate policy. Plaintiff argues it is well-established that where "an insurer defends by alleging that the claim

falls within an exception or exclusion to the policy, the burden of proof rests with the insurer."

It has been held generally that where an insurer attempts to limit liability by excluding coverage under certain circumstances, the insurer has the burden of showing that the loss claimed falls within the ambit of the exclusion. (See, *e.g., State Farm Mutual Automobile Insurance Co. v. Schmitt* (1981), 94 Ill. App. 3d 1062, 1064-65, 419 N.E.2d 601; *Voss v. Bituminous Casualty Corp.* (1977), 52 Ill. App. 3d 49, 51, 366 N.E.2d 159.) Nevertheless, the Illinois Appellate Court has held that claimants under automobile insurance policies have the burden of proof on the question of coverage on the issue of whether the nonowned automobile was furnished for the regular use of the driver. (*Continental National American Group v. Vaicunas* (1975), 26 Ill. App. 3d 835, 840, 325 N.E.2d 747; *Harter v. Country Mutual Insurance Co.* (1959), 20 Ill. App. 2d 413, 419-20, 156 N.E.2d 243; *Rodenkirk v. State Farm Mutual Automobile Insurance Co.* (1945), 325 Ill. App. 421, 432, 60 N.E.2d 269; see also 12A Couch, Cyclopedia of Insurance Law sec. 45:1807 (R. Anderson 2d ed 1965); contra, *State Automobile & Casualty Underwriters v. Ishmael* (1972), 87 S.D. 49, 202 N.W.2d 384.) The trial court, therefore, correctly concluded that the plaintiff as claimant had the burden of proof under an automobile insurance policy where the issue of coverage concerned the "regular use" provision of the policy.

■ The central issue in this appeal is whether Pamela Phillips was entitled to liability coverage under the Allstate policy issued to her mother. If the Dombek vehicle was available or furnished for Pamela's regular use, she is not entitled to coverage under the Allstate policy for this accident. It is not disputed by Allstate that Pamela was an insured person under the policy as a resident of her mother's household unless coverage is otherwise not afforded under the "regular use" clause for a nonowned automobile. The phrase "regular use" is undefined in the policy.

Plaintiff basically contends that the term "regular use" implies a broad degree of discretion given to the driver, and if the discretion is restricted or limited, as plaintiff argues is the case here, the automobile is not available for regular use. Such restricted or limited use, plaintiff asserts, is present here where Pamela was required to return the vehicle to Dombek on the weekends, and, in fact, was returning the automobile at the time of the accident, and her use during the week was for the main purpose of driving the car to and from work. Allstate also focuses on the discretion given to Pamela, and maintains that here the automobile was available for Pamela's use in her com-

plete discretion during the week, which makes it available for her regular use.

After an examination of Illinois appellate decisions and other authorities, our supreme court has stated that the phrase "regular use" as used in various automobile insurance policies is "not subject to absolute definition and that each case is dependent upon its own facts and circumstances." (*State Farm Mutual Automobile Insurance Co. v. Differding* (1977), 69 Ill. 2d 103, 107, 370 N.E.2d 543; see generally Annot., 8 A.L.R. 4th 387 (1981).) Thus, while other cases may give us guidance as to what constitutes regular use, each case must be resolved on its particular facts. In the few analogous Illinois decisions where the "regular use" clause has been at issue, an automobile was found available for regular use where the user was given the car to use "as he saw fit" while the owner was in the Army (*Rodenkirk v. State Farm Mutual Automobile Insurance Co.* (1945), 325 Ill. App. 421, 60 N.E.2d 269), and where the user was furnished the car to get back and forth to work "for as long as he needed it." (*Continental National American Group v. Vaicunas* (1975), 26 Ill. App. 3d 835, 325 N.E.2d 747.) In cases where an employee uses his employer's car, the courts have generally found the vehicle was available for regular use. (See, *e.g., Economy Fire & Casualty Co. v. Gorman* (1980), 84 Ill. App. 3d 1127, 406 N.E.2d 169; *Franey v. State Farm Mutual Automobile Insurance Co.* (1972), 5 Ill. App. 3d 1040, 285 N.E.2d 151.) In other jurisdictions, the decisions there, too, offer no precise definition of what constitutes regular use within the insurance policy clause, and the cases generally state the words "regular use" suggest a principal use as distinguished from a casual or incidental use, or an uninterrupted normal use for all purposes, without limitation as to use. See 6C Appleman, Insurance Law & Practice sec. 4455 (1979); 12A Couch, Cyclopedia of Insurance Law sec. 45:1072-1080 (R. Anderson 2d ed. 1965).

The rationale underlying this type of clause which does not afford coverage for a nonowned automobile furnished for the regular use of an insured is stated as follows:

> "[T]he exclusion of cars furnished for regular use to the insured or a member of his household would seem to indicate the intention of the company to protect itself from a situation where an insured could pay for one policy and be covered by the insurance in driving any car that he decided to use whether owned by him or members of his family, or cars that had been furnished for his regular use; in other words, cars under his control that he could use at will and might use often. Without

some such exclusion it is obvious that the company might lose premiums and also that the hazard under the insurance would be increased. It is evident that the purpose on the part of the company in extending the driver's regular insurance without the payment of any additional premiums would apply to the occasional driving of cars other than his own, but would be inapplicable to an automobile furnished to the insured for his regular use." (*Rodenkirk v. State Farm Mutual Automobile Insurance Co.* (1945), 325 Ill. App. 421, 433, 60 N.E.2d 269; see also 12A Couch, Cyclopedia of Insurance Law sec. 45:1074 (R. Anderson, 2d ed. 1965).

Addressing the facts at the case at bar, we find the following to be particularly determinative of whether Dombek's vehicle was or was not available for Pamela Phillips' regular use. First, the duration of her permission to use the automobile was never precisely agreed upon. Pamela was allowed the use of the automobile during the week for just two weeks prior to the accident. There was no arrangement how long this would continue, or, in fact, whether it would continue for the next week after the occurrence. Second, Pamela's use of the automobile was for the purpose of going to and from work, was limited to her travel during the week when Dombek was not using the vehicle, and apparently was a temporary accommodation to her because she lived on campus, and used the car generally to go to and from work. She even car-pooled with other drivers some of the time while she had the car during the two-week period. Finally, from this record it appears that both Phillips and Dombek did not regard her permission to use the automobile as anything more than a temporary, casual use of the automobile. Dombek had just arrived from San Diego on March 29, he kept the automobile himself for the first week at the Great Lakes Naval Base, and when he learned he was going to be at the base during the week, he allowed Pamela, an 18-year-old college student residing on campus, the use of the automobile temporarily to go to and from her part-time job.

We believe the availability of the Dombek vehicle on the facts here are more consistent with a limited and casual use, and not a regular use as characterized by the permission to use for all purposes and for a more definite period of time as evidenced by the facts in *Rodenkirk v. State Farm Mutual Automobile Insurance Co.* (1945), 325 Ill. App. 421, 60 N.E.2d 269, and *Continental National American Group v. Vaicunas* (1975), 26 Ill. App. 3d 835, 325 N.E.2d 747.

We agree with our supreme court's statement in *State Farm Mutual Automobile Insurance Co. v. Differding* (1977), 69 Ill. 2d 103,

107, 370 N.E.2d 543, that the phrase "regular use" is not subject to absolute definition and that each case is dependent on its own facts. The test of regular use suggested by the parties, the discretion given to the driver, is rejected, although the restrictions or limitations placed upon the driver are to be given consideration. As concluded above, on these facts we do not find the Dombek vehicle was furnished or available for Pamela Phillips' regular use. The judgment for Allstate is reversed, and the cause remanded with directions to the trial court to enter judgment for plaintiff.

Reversed and remanded with directions.

NASH, P.J., and LINDBERG, J., concur.