FOURTH DIVISION
Filed: July 13, 2006

1-05-0690, 1-05-1012 (Consolidated)

| | | |
|---|---|---|
| AMERICAN FREEDOM INSURANCE COMPANY, | ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 03 CH 6301 |
| JOHN URIOSTEGUI, ERIC BROWN, TATYANNA BENNETT and LATAVIA BROWN, Minors, By and Through Their Mother, DEMETRIC BROWN and TANISHA FAIRLEY, a Minor, By and Through Her Guardian, LOUISE FAIRLEY, SANGRIA MOODY, Individually, and as Special Administrator of the Estate of JOVANA BROWN, a Minor, Deceased, | ) ) ) ) ) ) ) ) ) | Honorable Sophia C. Hall, Judge Presiding. |
| Defendants-Appellees. | ) | |

JUSTICE MURPHY delivered the opinion of the court:

On January 27, 2002, codefendants Eric Brown, Tatyanna Bennett, Tanisha Fairley and Jovana Brown were all injured when struck by a vehicle driven by John Uriostegui. All injuries were minor, excepting a head injury to Jovana Brown which resulted in her death. Sangria Moody, special administrator of the estate of Jovana Brown, brought a survival and wrongful death action against Uriostegui. The remaining codefendants filed a separate complaint against Uriostegui for damages resulting from their personal injuries from the incident.

Plaintiff American Freedom Insurance Company filed a complaint for declaratory judgment against codefendants. Plaintiff requested that the trial court find its nonowner

automobile insurance policy with Uriostegui did not provide insurance coverage of this accident.  Following a bench trial, the trial court entered judgment in favor of plaintiff, finding that plaintiff was not obligated to defend or indemnify Uriostegui under the nonowner automobile insurance policy.  Codefendant Sangria Moody, as administrator of the estate of Jovana Brown, appealed that decision.  The remaining codefendants filed a separate appeal, which were consolidated by this court.  Only defendant Sangria Moody filed briefs in support of her appeal; however, codefendants have adopted these briefs as their own.

Essentially, this appeal consists of one issue for our review: whether the trial court erred in determining that plaintiff's nonowner automobile insurance policy excluded coverage of Uriostegui as the vehicle at issue was furnished for his "regular use."  For the following reasons, we affirm the trial court.

## I.  BACKGROUND

On November 30, 2001, pursuant to a court order to purchase automobile insurance, John Uriostegui went to the Yale Insurance Agency in Oakbrook Terrace, Illinois, to purchase a policy.  After talking with an insurance agent, Uriostegui purchased an automobile insurance policy issued by plaintiff.  At the time, Uriostegui did not own a vehicle, but specifically needed an insurance policy to drive his grandmother's 1992 Ford Crown Victoria.  Therefore, he purchased a non-owner insurance policy recommended by the insurance agent.

The amendment endorsement to the policy defines a "non-owned autmobile" as

3

"an automobile not owned by or furnished for the regular use of the named insured or a resident of the same household." Plaintiff further provided in the amendment to the nonowner policy that this type of policy was not intended to insure any person driving an automobile that did not meet this definition. Uriostegui was charged an annual premium of $703 for the policy.

On January 27, 2002, at approximately 4 p.m., Uriostegui was driving his grandmother's 1992 Ford Crown Victoria west on West 55th Street in Chicago, Illinois. At this time, codefendants and Jovana Brown were crossing South Western Avenue outside of the crosswalk at the intersection of South Western Avenue and West 55th Street. Immediately after turning south onto South Western Avenue, Uriostegui struck codefendants and Jovana Brown with his grandmother's vehicle. Codefendants were taken to the hospital with minor injuries. Jovana Brown, however, suffered serious head injuries from the accident and died shortly thereafter.

Codefendants filed suit against Uriostegui claiming that his negligent driving caused their injuries and demanded the policy limits on his insurance policy with plaintiff. Plaintiff responded by filing an action for declaratory judgment against the named defendants. Plaintiff asserted in its complaint that it had no obligation to defend or indemnify Uriostegui in the underlying civil actions. Plaintiff claimed that the vehicle involved was furnished for his "regular use," thereby rendering it exempt under the nonowner policy. The matter then progressed to a bench trial.

At the outset of the trial, the parties entered into four stipulations, two of which

are of note.  In particular, the parties stipulated that, on the date of the accident, January 27, 2002, Uriostegui did not own the vehicle at issue.  Second, they stipulated that, on that same date, Paula Mendez, Uriostegui's grandmother, was the legal owner of the vehicle.

Bill Moran, a claims adjuster for plaintiff, testified first.  Moran testified that he denied Uriostegui coverage on January 28, 2002, based on the amendment endorsement.  Moran completed a check of records with the Illinois Secretary of State to determine that Paula Mendez was the registered owner of the vehicle.  However, Moran also conducted a tape-recorded telephonic interview of Uriostegui.  Uriostegui admitted to Moran that he used the vehicle approximately three times a week and that it was his main form of transportation.  Therefore, Moran concluded the vehicle was furnished for Uriostegui's regular use and he denied coverage.

Uriostegui next took the stand.  He testified that he purchased his nonowner's policy on November 30, 2001, pursuant to a court order.  Uriostegui stated that he did not own the vehicle at that time and purchased the nonowner's policy because it was cheaper.  In December 2001, he purchased the vehicle from his grandmother.  Prior to his grandmother's departure to live in Mexico, she gave him permission to drive the vehicle and allowed him to use her license plates until he had sufficient funds to transfer title of the vehicle to his name.  Uriostegui's grandmother remained in Mexico through the time of the accident and he did not talk with her again before the accident.

Uriostegui further testified that during January 2002, he had keys to the vehicle

5

and was the only person driving the vehicle.  In fact, he was able to use the vehicle at any time he wanted.   Though he would also use public transportation, he chose to drive more often than the two to three days a week he worked due to the cold weather and shorter commute.  Uriostegui admitted that the vehicle was his main form of transportation.

Finally, Uriostegui's father testified that in January 2002, his son was living with him and his wife.  He further testified that Paula Mendez owned the vehicle at issue, but was aware that his son had purchased the vehicle and was the only person driving it in January 2002.  However, he testified that he did not know how often his son drove the vehicle during a typical week.

The trial court entered an order in favor of plaintiff.  The court specifically held that plaintiff was not obligated to defend or indemnify John Uriostegui under the nonowner's policy.  On appeal, codefendants argue that the trial court erred in finding the vehicle was furnished for the regular use of Uriostegui and thereby excluded from coverage by plaintiff's automobile insurance policy.

## II.  ANALYSIS

Codefendants first argue that the trial court erred in its interpretation of the language of plaintiff's automobile insurance policy with Uriostegui.  They highlight that review of a contract of insurance is *de novo*.  Hobbs v. Hartford Insurance Co. of the Midwest, 214 Ill. 2d 11, 17 (2005).  We also note that if terms of a policy are ambiguous, we must liberally construe the language to favor coverage of the insured.  State Farm

6

1-05-0690, 1-05-1012 (cons.)

Mutual Automobile Insurance Co. v. Villicana, 181 Ill. 2d 436, 442 (1998). However, codefendants' reading of the policy language is untenable.

Codefendants claim that plaintiff's use of the disjunctive "or" in defining regular use requires a finding of coverage in this case. It was undisputed that Uriostegui did not own the vehicle. Codefendants valiantly attempt a grammatical analysis of the policy definition to show that the disjunctive "or" is not interchangeable with the conjunctive "and," thereby requiring coverage if the vehicle at issue is either not owned or not provided for regular use. We cannot interpret the policy language this way.

Again, the policy limits coverage to "non-owned automobiles." A "non-owned automobile" is defined in the policy as "an automobile not owned by or furnished for the regular use of the named insured or a resident of the same household." Placing "not" before "or" in this case simply utilizes the disjunctive "or" as a device to identify two separate scenarios where a vehicle may be determined a "non-owned automobile." Even liberally construing this language to favor coverage, the plain language of this definition is simply that, to be covered, the policyholder must not either own the vehicle or have the vehicle furnished for his regular use.

Next, we consider the main issue in this case, whether or not the trial court properly determined the vehicle at issue was provided for Uriostegui's regular use. There is no dispute that the term "regular use" is not subject to absolute definition and that we must consider its meaning based on the facts of each particular case. State Farm Mutual Automobile Insurance Co. v. Differding, 69 Ill. 2d 103, 107 (1977). As

7

such, previous cases may only give guidance in analyzing whether the facts of this case demonstrate regular use of the vehicle at issue. Knack v. Phillips, 134 Ill. App. 3d 117, 121 (1985). We note that the parties rely heavily on case law from foreign jurisdictions for their discussions of regular use. Case law from foreign jurisdictions does not have binding authority on this court. Kim v. Mercedes-Benz, USA, Inc., 353 Ill. App. 3d 444, 455 (2004). Therefore, although there are few analagous cases on point, the applicable Illinois case law is sufficient for guidance in analyzing the facts in this case and deciding this issue.

In Differding, the defendant, a Northern Illinois University student, sublet a summer apartment from a professor, who also asked her to maintain his automobile, only restricting its use to within the DeKalb, Illinois, area. Differding, 69 Ill. 2d at 105. The defendant drove the automobile regularly and frequently. In fact, on the fourth time the defendant utilized the automobile for a trip outside of DeKalb, Illinois, to her permanent residence in Park Forest, Illinois, she was involved in an accident. Differding, 69 Ill. 2d at 105-106. The supreme court upheld the trial court's finding that the automobile was furnished for the defendant's regular use and not covered. Differding, 69 Ill. 2d at 107.

In contrast, in Knack, upon which codefendants place heavy reliance, the Second District of this court reversed a trial court's finding of regular use. Knack, 134 Ill. App. 3d at 123. In that case, the defendant, a student, lived on campus at Judson College in Elgin, Illinois, while her fiancé was stationed in the Navy at the Great Lakes Naval

8

Station. Defendant was granted permission by her fiancé to use his vehicle during the week to drive to her part-time job and then to pick him up on the weekends. The defendant used the car to drive to work, though she still carpooled at times during the two-week period she had the vehicle. After the second week she had the vehicle, she was involved in an accident. Knack, 134 Ill. App. 3d at 118-19.

The court rejected the parties' arguments that the discretion granted to the driver is the test of regular use. Knack, 134 Ill. App. 3d at 123. Rather, the court found this was just one consideration of a "regular use" analysis. Knack, 134 Ill. App. 3d at 122. First, the court noted that the duration of the defendant's use was not defined. Knack, 134 Ill. App. 3d at 122. Second, the defendant's use of the vehicle was limited to weekdays for travel to work, when the owner was not using the vehicle. Knack, 134 Ill. App. 3d at 122. Third, the record demonstrated that the defendant and owner only regarded her permission to use the vehicle for temporary, casual use. Knack, 134 Ill. App. 3d at 122. Accordingly, the court held that the availability of the car was consistent with a "limited and casual use, and not a regular use as characterized by the permission to use for all purposes." Knack, 134 Ill. App. 3d at 122.

In Soumpholphakdy v. Prudential Property & Casualty Insurance, 188 Ill. App. 3d 602 (1989), the defendant, a superintendent for a general contracting firm, utilized a company truck for about 75% of his visits to jobsites and kept a truck at his home overnight about 50% of those times. Soumpholphakdy, 188 Ill. App. 3d at 606. As a rule, the defendant's employer did not favor personal use of company vehicles;

8

however, he granted permission, depending on the employee. In fact, the defendant received permission to use the truck for his personal use on the day of the accident. Soumpholphakdy, 188 Ill. App. 3d at 607. On the day he got into an accident, the defendant utilized the truck to move furniture in the morning and then attended a party. Soumpholphakdy, 188 Ill. App. 3d at 607. This court found that the defendant's regular work use, infrequent though authorized personal use, and overnight storage of the company truck established regular use of a nonowned vehicle supporting the trial court's grant of summary judgment in favor of the insurer. Soumpholphakdy, 188 Ill. App. 3d at 608.

In Auto Owners Insurance Co. v. Miller, 138 Ill. 2d 124 (1990), the supreme court again reviewed the use of a company vehicle and reversed a decision cited by the Soumpholphakdy court in its analysis. In Miller, the driver of a company truck that was provided to him for business use only, struck and injured the defendants while driving home from a golf outing which was purely personal in nature. Miller, 138 Ill. 2d at 127-29. The driver was aware of an unwritten rule that personal use of company trucks would result in discharge, but utilized the vehicle for his personal use anyway. Miller, 138 Ill. 2d at 129. The court found that the record clearly showed the driver was authorized to use the truck solely for business purposes, not his personal use or regular use. Miller, 138 Ill. 2d at 129. Further, the driver was discharged from his job after the accident. Miller, 138 Ill. 2d at 129. Accordingly, the supreme court found that the trial court's decision that the vehicle was not furnished for regular use was not against the

manifest weight of the evidence. <u>Miller</u>, 138 Ill. 2d at 130.

The facts of this case point more clearly toward a finding that the vehicle was provided for Uriostegui's regular use and that he indeed regularly used the vehicle at his discretion. Unlike <u>Soumpholphakdy</u> and <u>Miller</u>, the vehicle at issue in this case was not a business vehicle provided to Uriostegui. Rather, Uriostegui testified that he paid his grandmother an agreed sum for the vehicle and it was available for his use at any time. Further, he received her permission to use her license plates until he could afford to transfer title of the vehicle. Though there was no defined duration for use, the record allows for no other conclusion than Uriostegui's use was open-ended. Further, testimony was offered that Uriostegui was the only user of the vehicle for at least the month prior to the accident and would use the vehicle at his discretion at least three times a week. Unlike in <u>Knack</u>, there is no evidence that this arrangement was limited to certain days or regarded as temporary by any means. Unlike in <u>Differding</u> and <u>Miller</u>, no restrictions were placed on Uriostegui's usage of the vehicle. In fact, as he paid his grandmother for the car and she returned to Mexico with no one else using the vehicle, Uriostegui effectively owned the vehicle in every way but title.

The fact is Uriostegui need not hold title to the vehicle for plaintiff to deny coverage, so long as the vehicle was furnished for regular use. The purpose of the "regular use" clause is to provide coverage for occasional use of a vehicle, not regular, habitual or principal use. Such regular, habitual or principal use opens up the insurance company to greater liability; therefore the nonowner policy mandates a lower premium.

The facts of this case far surpass those of established case law in support of a finding the vehicle was furnished for regular use.  Uriostegui not only admitted to regular and principal use of the vehicle, he admitted he chose the policy due to its lower cost.  Accordingly, we find the vehicle was furnished for Uriostegui's regular use and we affirm the trial court's finding that plaintiff had no duty to indemnify or defend Uriostegui under the policy.

## III.  CONCLUSION

Accordingly, for the aforementioned reasons, the decision of the trial court is affirmed.

Affirmed.

Quinn, P.J. and Greiman, J., concur.