NOTICE
Decision filed 09/10/19. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2019 IL App (5th) 180426

NO. 5-18-0426

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT
_____

| | | |
|---|---|---|
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, | ) ) ) | Appeal from the Circuit Court of Marion County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 17-MR-48 |
| BRITTANY BIERMAN, as Special Administrator of the Estate of Blake Edward Miller, Deceased, | ) ) ) ) ) | Honorable Michael D. McHaney, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE OVERSTREET delivered the judgment of the court, with opinion.
Justices Cates and Moore concurred in the judgment and opinion.

**OPINION**

¶ 1   The decedent, Blake Edward Miller, died as a result of injuries he sustained in a collision involving a nonowned, uninsured vehicle. The plaintiff, State Farm Mutual Automobile Insurance Company (State Farm), brought action against Brittany Bierman, as special administrator of Blake's estate, seeking a declaratory judgment that it owed no coverage for Blake's injuries. State Farm asserted that Blake was not an "insured" for purposes of uninsured motorist coverage and medical payments coverage under three policies of automobile liability insurance issued by State Farm to Winnie Robertson, Blake's former stepmother. On cross-motions for summary judgment, the circuit court entered summary judgment in favor of State Farm. Brittany appeals the circuit

1

court's order. For the following reasons, we reverse the circuit court's order, and we remand for further proceedings.

¶ 2                                    I. BACKGROUND

¶ 3     On June 18, 2016, Blake, a passenger in a nonowned, uninsured vehicle driven by Jared Simcox, was critically injured in a one-vehicle collision, and on July 6, 2016, Blake died from his injuries. On the date of the accident, Blake had been living rent-free with Winnie in her home in Sandoval, Illinois, for approximately six months. Blake, born in 1986, was the biological son of Jodie Ramsey and David Miller. David was married to Winnie from 1993 until 2003, when they divorced, but David continued to periodically reside with Winnie postdivorce until his death in 2009. Winnie never adopted Blake.

¶ 4     Winnie was a named insured pursuant to three State Farm insurance policies, each of which provided uninsured motorist coverage to insureds thereunder. Specifically, State Farm issued policies of motor vehicle insurance to Winnie for a 2000 Ford F-150 pickup truck, another 2000 Ford F-150 pickup truck, and a 2006 Harley-Davidson motorcycle, and the policies were in effect on the date of the automobile accident. All three policies provided uninsured motorist coverage of $100,000 per person/$300,000 per accident. The two policies issued to the Ford pickup trucks also included medical payments coverage of $10,000.

¶ 5     The policies provided, in pertinent part:

"DEFINITONS

* * *

*Non-Owned Car* means a *car* that is in the lawful possession of *you* or any *resident relative* and that neither:

1.       is *owned by*:

2

a. *you*;

b. any *resident relative*;

c. any other *person* who resides primarily in *your* household; or

d. an employer of any *person* described in a., b., or c. above; nor

2.     has been operated by, rented by, or in the possession of:

a. *you*; or

b. any *resident relative*

during any part of each of the 31 or more consecutive days immediately prior to the

date of the accident or *loss*.

\* \* \*

*Resident Relative* means a *person*, other than *you*, who resides primarily with the first

*person* shown as a named insured on the Declarations Page and who is:

1.     related to that named insured or his or her spouse by blood, marriage, or adoption,

including an unmarried and unemancipated child of either who is away at school

and otherwise maintains his or her primary residence with that named insured; or

2.     a ward or a foster child of that named insured, his or her spouse, or a *person*

described in 1. above.

\* \* \*

MEDICAL PAYMENTS COVERAGE

\*\*\*

*Additional Definitions*

*Insured* means:

1.     *you* and *resident relatives*:

3

a. while *occupying*:

    (1) *your car*;

    (2) a *newly acquired car*;

    (3) a *temporary substitute car*;

    (4) a *non-owned car*; or

    (5) a *trailer* while attached to a *car* described in (1), (2), (3), or (4) above; or

\* \* \*

*Insuring Agreement*

*We* will pay:

1.    *medical expenses* incurred because of *bodily injury* that is sustained by an *insured* and caused by a motor vehicle accident \*\*\*:

\* \* \*

UNINSURED MOTOR VEHICLE COVERAGE—BODILY INJURY

\*\*\*

*Additional Definitions*

*Insured* means:

1.    *you*;

2.    *resident relatives*;

3.    any other *person* while *occupying*:

    a.    *your car*;

    b.    a *newly acquired car*; or

    c.    a *temporary substitute car*.

\*\*\*; and

4.      any *person* entitled to recover compensatory damages as a result of *bodily injury* to an *insured* as defined in 1., 2., or 3. above.

\* \* \*

*Insuring Agreement*

*We* will pay compensatory damages for *bodily injury* an *insured* is legally entitled to recover from the owner or driver of an *uninsured motor vehicle*. The *bodily injury* must be:

1.      sustained by an *insured*; and

2.      caused by an accident that involves the operation, maintenance, or use of an *uninsured motor vehicle* as a motor vehicle." (Emphases in original.)

¶ 6      Brittany asserted a claim for medical payments coverage and uninsured motorist coverage on behalf of Blake's estate. In response, on March 19, 2018, State Farm filed its amended complaint for declaratory judgment, asserting that Blake was not insured for uninsured motor vehicle coverage or medical payments coverage because he was not a "resident relative" under the policies issued to Winnie. State Farm asserted that Blake was not Winnie's "resident relative" because he was not related to her by blood, marriage, or adoption on the date of the accident and because he did not "reside[ ] primarily" with Winnie on the date of the accident.

¶ 7      On June 7, 2018, State Farm filed an amended motion for summary judgment, attaching, *inter alia*, Winnie's affidavit and deposition. In Winnie's affidavit, dated October 30, 2017, she attested that she was not related to Blake by blood and had never adopted him. In her discovery deposition, dated February 19, 2018, Winnie testified that although she had had little prior contact with Blake, he contacted her Christmas 2015 and asked if she could rent a hotel room for him. Winnie testified that because she could not afford to rent a hotel room, she told him he could spend

the night in her home. Winnie testified that he brought with him a bag of clothes. Winnie testified that for the next six months, Blake would "come in, spend the night, and leave," and then he would phone a couple days later to ask if he could wash his clothes and spend the night again. Winnie testified that Blake "came and went," "did his laundry at [her] house," and stayed "[m]aybe twice a week." Winnie testified that Blake often spent Friday nights at her home with his daughter. Winnie testified that Blake would spend Saturday nights with his sister, Tanna, and then "he would come home." Winnie testified that Blake stayed with Tanna two or three nights a week, "more than he stayed with anybody." Winnie testified that this arrangement continued until Blake died.

¶ 8     Winnie testified that from Christmas 2015 until June 18, 2016, while Blake stayed at her home, she did not charge him rent. Winnie testified that he did not store belongings at her house but he carried his black bag of clothes wherever he went. Winnie testified that she planned for his stay to be short-term. Winnie testified that Blake slept in her grandson's bedroom and that Blake knew he could not live with her because her grandson stayed with her periodically. Winnie testified that she had told Blake that he could not stay in her home on a permanent basis.

¶ 9     During her deposition, Winnie acknowledged that during a phone conversation with a State Farm agent, she had stated that Blake had lived with her for approximately five months prior to his death. The transcript of the February 2017 telephone call between Winnie and Linda Tyson of State Farm revealed that Winnie had stated that Blake had lived with her on June 18, 2016, that Blake had moved into her home approximately five months prior to the accident, and that Blake did not receive mail at her address.

¶ 10     On June 12, 2018, Brittany also filed a motion for summary judgment, requesting the circuit court to declare that Blake was an "insured" under the policies for purposes of uninsured motorist and medical payments coverage because he was a "resident relative." On July 18, 2018,

6

Brittany filed a motion to supplement her motion for summary judgment and attached the discovery deposition transcript of Jared Simcox. In his deposition dated May 4, 2017, Jared testified that his mother and Blake's mother are sisters. Jared testified that in June 2016, Blake had lived with Winnie for a couple of years. Jared testified that he had visited Blake at Winnie's home, where Blake had his own bedroom and kept his worldly possessions. Jared testified that Blake also kept a dog in Winnie's home. Jared testified that only Winnie and Blake lived in the home.

¶ 11     On August 7, 2018, the circuit court entered summary judgment in favor of State Farm. In its order, the circuit court identified as the central issue whether Blake was a "resident relative" of Winnie, State Farm's named insured. The circuit court concluded that because the facts were conflicting, it could not find as a matter of law that Blake "resided" with Winnie at the time of the accident and therefore denied Brittany's motion for summary judgment. With regard to whether Blake was considered a "relative" of Winnie at the time of the accident, the circuit court noted that Winnie had testified that before December 2015, she had not spoken to Blake for years and had no relationship with David's side of the family. The court concluded that no *de facto* relationship existed between Winnie and Blake and thereby granted State Farm's amended motion for summary judgment. On September 4, 2018, Brittany filed a timely notice of appeal.

¶ 12                                   II. ANALYSIS

¶ 13     On appeal, Brittany argues that the circuit court improperly entered summary judgment in State Farm's favor. Brittany argues that Blake was an "insured" on June 18, 2016, when he was critically injured while a passenger in a nonowned, uninsured vehicle and subsequently passed away. More specifically, Brittany argues that Blake qualified as Winnie's "resident relative" on June 18, 2016.

7

¶ 14    Section 2-1005 of the Code of Civil Procedure provides that summary judgment should be granted if the pleadings, depositions, admissions, and affidavits on file, when viewed in the light most favorable to the nonmoving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2016). The movant's right to summary judgment must be "clear and free from doubt." *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). If an examination of the record reveals that "it can be fairly stated that a triable issue of fact exists, the motion should be denied." *Ramirez v. Smart Corp.*, 371 Ill. App. 3d 797, 801 (2007) (citing *Bellmer v. Charter Security Life Insurance Co.*, 140 Ill. App. 3d 752 (1986)). "When parties file cross-motions for summary judgment, they agree that only a question of law is involved and invite the court to decide the issues based on the record." *Pielet v. Pielet*, 2012 IL 112064, ¶ 28. "However, the mere filing of cross-motions for summary judgment does not establish that there is no issue of material fact, nor does it obligate a court to render summary judgment." *Id.*

¶ 15    When interpreting the language of an insurance policy, we apply the general rules governing the interpretation of contracts. *Hobbs v. Hartford Insurance Co. of the Midwest*, 214 Ill. 2d 11, 17 (2005). Accordingly, our primary objective in construing the language of an insurance policy is "to ascertain and give effect to the intentions of the parties as expressed by the language of the policy." *Valley Forge Insurance Co. v. Swiderski Electronics, Inc.*, 223 Ill. 2d 352, 362 (2006).

> "To ascertain the intent of the parties and the meaning of the words used in the insurance policy, the court must construe the policy as a whole, taking into account the type of insurance for which the parties have contracted, the risks undertaken and purchased, the

8

subject matter that is insured and the purposes of the entire contract." *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 391 (1993).

¶ 16    "If the words used in the policy are clear and unambiguous, they must be given their plain, ordinary, and popular meaning." *Central Illinois Light Co. v. Home Insurance Co.*, 213 Ill. 2d 141, 153 (2004). If, on the other hand, "the words in the policy are susceptible to more than one reasonable interpretation, they are ambiguous [citation] and will be construed in favor of the insured and against the insurer who drafted the policy [citations]." *Outboard Marine*, 154 Ill. 2d at 108-09; see *State Farm Mutual Automobile Insurance Co. v. Progressive Northern Insurance Co.*, 2015 IL App (1st) 140447, ¶ 93; *State Farm Mutual Automobile Insurance Co. v. Differding*, 46 Ill. App. 3d 15, 19 (1977) ("Insurers write the policies and if the language of the contract has a dual interpretation they must be charged with the ambiguity."). "While we will not strain to find an ambiguity where none exists [citation], neither will we adopt an interpretation which rests on 'gossamer distinctions' that the average person, for whom the policy is written, cannot be expected to understand." *Founders Insurance Co. v. Munoz*, 237 Ill. 2d 424, 433 (2010). "When construing the language of an insurance policy, we must assume that every provision was intended to serve a purpose." *Id.* Whether an insurance policy is ambiguous is a question of law, subject to *de novo* review. *State Farm Mutual Automobile Insurance Co. v. Villicana*, 181 Ill. 2d 436, 441 (1998). Likewise, an appellate court conducts a *de novo* review of record evidence when reviewing a circuit court's order on a motion for summary judgment. *Espinoza v. Elgin, Joliet & Eastern Ry. Co.*, 165 Ill. 2d 107, 113 (1995).

¶ 17    Two policies at issue in this case provided coverage for medical expenses incurred because of bodily injury sustained by an "insured," which was defined as a "resident relative" occupying a nonowned car. All three policies provided coverage for compensatory damages for bodily injury

9

sustained by an "insured" who is legally entitled to recover from the driver or owner of an uninsured motor vehicle and defined an "insured" as a "resident relative." "Resident [r]elative" is defined in the policy as "a person, other than you, who resides primarily with the *** named insured *** and who is *** related to that named insured or his or her spouse by blood, marriage, or adoption." This "resident relative" language in the policies imposes two separate requirements, both of which must be satisfied to create coverage. First, Blake, the putative insured, must have been related to Winnie, the named insured, by blood, marriage, or adoption. Second, he must have resided primarily with her. These questions of applicable coverage are determined as of June 18, 2016, the date of the accident creating potential liability. See *Gaudina v. State Farm Mutual Automobile Insurance Co.*, 2014 IL App (1st) 131264, ¶ 26 (questions of applicable coverage of an insurance policy are determined as of the time of the accident creating potential liability).

¶ 18    The parties do not contend that Blake was related to Winnie by blood or adoption. Accordingly, to qualify Blake for coverage under Winnie's policies, we must conclude that Blake was related by marriage to Winnie, despite Winnie and David's divorce and David's death. Alternatively, we must conclude that the provision at issue is ambiguous, or susceptible to at least two reasonable interpretations, including the interpretation that Blake was related by marriage to Winnie on the date of the accident, and construe it against State Farm and in favor of coverage. See *Illinois Emcasco Insurance Co. v. Tufano*, 2016 IL App (1st) 151196, ¶ 20. The circuit court concluded that Blake was not related to Winnie by blood, marriage, or adoption because the marriage between Winnie and David had terminated prior to the accident.

¶ 19    Although the insurance policies at issue defined a "resident relative" as a person "who resides primarily with" the named insured and who is "related" to the named insured "by blood, marriage, or adoption," they did not further clarify the meaning of the phrase "related *** by

10

marriage." Merriam-Webster defines "relative" as one "connected with another by blood or affinity." Merriam-Webster's Online Dictionary, http://www.merriam-webster.com/dictionary/relative (last visited Aug. 30, 2019) [https://perma.cc/ZMU2-TDW8]; Webster's Third New International Dictionary 1916 (1993). Similarly, Dictionary.com defines "relative" as "a person who is connected with another or others by blood or marriage." Dictionary.com, http://dictionary.reference.com/browse/relative?s=t (last visited Aug. 30, 2019) [https://perma.cc/9ZGU-SN8S]. Finally, Black's Law Dictionary defines "relative" as a "kinsman; a person connected with another by blood or affinity," and defines "affinity" as "[t]he connection existing, in consequence of marriage, between each of the married persons and the kindred of the other." Black's Law Dictionary 59, 1289 (6th ed. 1990); Black's Law Dictionary 1480 (10th ed. 2009).

¶ 20    Accordingly, affinity is the relation one spouse, because of the marriage, has to the blood relatives of the other spouse. *Calloway v. Allstate Insurance Co.*, 138 Ill. App. 3d 545, 547 (1985). In *Clawson v. Ellis*, 286 Ill. 81, 83 (1918), our supreme court explained the concept as follows:

> "Affinity is the relation contracted by marriage between the husband and his wife's kindred and between the wife and her husband's kindred. The marriage places the husband in the same degree to the blood relations of the wife as that in which she herself stands toward them and gives the wife the same connection with the blood relations of the husband. [Citations.] One who contracts a marriage thereby enters into a relation by affinity with the kindred of the spouse but does not assume that relation with persons married to such kindred, and the relation does not include persons related to the spouse only by affinity."

See also *State Farm Mutual Automobile Insurance Co. v. Byrne*, 156 Ill. App. 3d 1098, 1101-02 (1987); *Calloway*, 138 Ill. App. 3d at 547-48.

11

¶ 21    Therefore, by common understanding, the term "related *** by *** marriage" encompassed Winnie and Blake's stepparent-stepchild relationship during the marriage of Winnie and David. See *Byrne*, 156 Ill. App. 3d at 1101 ("[g]enerally, the courts recognize a relationship of affinity between a stepchild and a stepparent"); *Calloway*, 138 Ill. App. 3d at 547-48 (named insured's stepgrandson's wife was not "relative" of named insured for purposes of uninsured motorist provision); *Sypien v. State Farm Mutual Automobile Insurance Co.*, 111 Ill. App. 3d 19, 24 (1982) (named insured's live-in girlfriend's daughter was not "relative" of named insured's "spouse" for purposes of uninsured motorist provision). However, the policy language lacks guidance regarding whether Blake continued to be "related *** by *** marriage" to Winnie after Winnie and David divorced and David died.

¶ 22    Our appellate court and other courts have held that a relationship by affinity, including the stepparent-stepchild relationship, does not automatically terminate with the end of the marriage that created it. See *Christine A.T. v. H.T.*, 326 Ill. App. 3d 569, 572 (2001) ("We are aware of no authority *** for the rather startling proposition that the death of a child's biological parent severs the stepparent/stepchild relationship."); *Remington v. Aetna Casualty & Surety Co.*, 646 A.2d 266, 272 (Conn. App. Ct. 1994) (Freedman, J., concurring) ("[W]e would do a far better service to the development of the law, and would be in keeping with the times, by holding that a stepparent-stepchild relationship, though created by a marriage, endures beyond that marriage, no matter how the marriage is terminated."), *rev'd on other grounds*, 692 A.2d 399 (Conn. 1997); *Spear v. Robinson*, 29 Me. 531, 545 (1849) (relationships by affinity are not terminated by the dissolution of the marriage which created them, either by divorce or death of one of the parties). The Seventh Circuit Court has noted the following:

12

"In common usage we frequently hear the term 'brother-in-law' or 'sister-in-law' applied to a person whose marriage has been dissolved by death or divorce. Such a relationship by affinity, once created, is not generally regarded as terminated by the death of one of the parties to the marriage or by a divorce. Nor have lexicographers recognized that the word has any such limited meaning. See Webster's New International Dictionary." *Steele v. Suwalski*, 75 F.2d 885, 889 (7th Cir. 1935).

¶ 23    In *Sjogren v. Metropolitan Property & Casualty Insurance Co.*, 703 A.2d 608, 610 (R.I. 1997), the Rhode Island Supreme Court examined whether the phrase "related by marriage" applied to a stepson who remained within his stepmother's household following the parents' divorce. The insurance policy at issue extended uninsured motorist coverage under certain circumstances to " 'you or a relative.' " *Id.* The policy defined "relative" as " 'a person related to you by blood, marriage or adoption, and who also resides in your household.' " *Id.* The Rhode Island court concluded that the policy language clearly contemplated coverage of relatives by affinity, including stepchildren and stepparents, but addressed the more challenging task of determining whether "affinal relationships persist after the dissolution of the relevant marriage." *Id.* at 611.

¶ 24    In determining whether the affinal relationship persisted after dissolution of the relevant marriage, the Supreme Court of Rhode Island held that the term "relative" was inherently ambiguous and the policy's explanation that relative is someone " 'related *** by blood, marriage or adoption' " did nothing to dispel the ambiguity. *Id.* at 612. The court concluded that "[t]he phrase 'related by marriage' ha[d] no settled, unequivocal definition that would preclude the continuing existence of steprelationships after the divorce or the death of the biological parent." *Id.* Construing the ambiguity against the insurer and in favor of the insured, the Supreme Court of

13

Rhode Island concluded that "related by marriage" encompassed uninsured motorist insurance coverage for the stepchild, as a relative of the wife, even though the biological parent was no longer present. *Id.*

¶ 25     We find the reasoning in *Sjogren* persuasive. We find that the policies' "related *** by *** marriage" provision is reasonably susceptible to more than one interpretation. On the one hand, we consider as reasonable, as have other courts, the interpretation that the term "related by marriage" encompasses a stepparent relationship even absent the biological parent. See *Steele*, 75 F.2d at 887-88 (and cases cited therein) (in construing insurance policy, courts have concluded that relationship by affinity is not usually regarded as terminated by the death of the spouse or the divorce of the parties to the marriage out of which the affinity relationship arose); *Remington*, 646 A.2d at 270 (Connecticut intermediate appellate court, sitting *en banc*, unanimously held that a stepson would be covered as a relative for uninsured motorist purposes if the proper showing of a continuing familial relationship was made as a matter of fact, even though his natural father had died sometime earlier); *Jones v. Firemen Relief Ass'n of City of Milwaukee*, 138 N.W. 618 (Wis. 1912) (firemen's relief association provided for payment of insurance to beneficiary named in the membership certificate as long as beneficiary is, among other things, mother of deceased, and court held that stepmother was "mother" within meaning of clause, even though father had died and stepmother had married again); *Simcoke v. Grand Lodge A.O.U.W. of Iowa*, 51 N.W. 8 (Iowa 1892) (in construing insurance policy requiring beneficiary to be "relative," court held that stepfather remained relative by affinity even after death of wife, on whom the relationship depended).

¶ 26     On the other hand, we also find reasonable the interpretation that the divorce or death of a spouse terminates a marriage and, thus, the surviving spouse is no longer "related by marriage" to

14

the other spouse's children, *i.e*, the legal relationship formed as a result of marriage terminates on divorce or death of a spouse. See *Devine v. Gateway Insurance Co.*, 60 S.W.3d 6, 9-10 (Mo. Ct. App. 2001) (relationship by affinity between former stepfather and former stepdaughter ended at time of divorce, and thus, at the time of the accident, they were not related by marriage, and stepfather was not entitled to recover underinsured motorist benefits as "resident relative"); *Randolph v. Nationwide Mutual Fire Insurance Co.*, 242 A.D.2d 889, 890 (N.Y. App. Div. 1997) (stepchild was not "relative" of insured stepparent within exclusion from liability coverage for bodily injury to resident relatives because relationship of affinity terminated upon the death of the biological parent); *Groves v. State Farm Life & Casualty Co.*, 829 P.2d 1237 (Ariz. Ct. App. 1992) (former son-in-law of named insured was not "relative" under terms of homeowners insurance policy); *Demaio v. State Farm Mutual Automobile Insurance Co.*, 534 So. 2d 1244 (Fla. Dist. Ct. App. 1988) (former nephew by affinity of named insured was not related to insured because relationship terminated with the insured uncle's divorce from the nephew's biological aunt).

¶ 27     Because the policy language is subject to more than one reasonable construction, it is ambiguous. See *Dungey v. Haines & Britton, Ltd.*, 155 Ill. 2d 329, 336 (1993); see also *American Family Mutual Insurance Co. v. Hinde*, 302 Ill. App. 3d 227, 232 (1999) ("In determining whether there is an ambiguity, the provision in question cannot be read in isolation but must be read with reference to the facts of the case at hand."); *Hoglund v. State Farm Mutual Automobile Insurance Co.*, 148 Ill. 2d 272, 279 (1992) (even if the language in an insurance policy is clear and intelligible and suggests but a single meaning, a "latent ambiguity" may arise where "some extrinsic fact or extraneous evidence creates a necessity for interpretation or a choice among two or more possible meanings" (internal quotation marks omitted)). Because the "related *** by *** marriage" provision is ambiguous, it should be construed in favor of the insured. See *Tufano*, 2016 IL App

15

(1st) 151196, ¶ 20. Thus, the language should be construed in favor of coverage for Blake's injuries.

¶ 28    To qualify Blake for coverage under Winnie's policies, we must also consider whether Blake "reside[d] primarily" with Winnie. Brittany does not argue on appeal that this policy provision was ambiguous and must be construed against the provision's drafter. Instead, Brittany argues that Blake clearly "reside[d] primarily" with Winnie on June 18, 2016, that there remained no genuine issue of material fact, and that she was therefore entitled to summary judgment in her favor. The circuit court, however, determined that there were material issues of fact regarding whether Blake "reside[d] primarily" with Winnie, which made summary judgment in Brittany's favor inappropriate. We agree with the circuit court, and we note that State Farm does not contest the court's finding of a material issue of fact for the purpose of this appeal.

¶ 29    The term resident generally is construed liberally in favor of the insured and strongly against the insurer. *Coriasco v. Hutchcraft*, 245 Ill. App. 3d 969, 970 (1993); *Hawkeye Security Insurance Co. v. Sanchez*, 122 Ill. App. 3d 183, 186 (1984). The reasonable interpretation, however, requires a case-specific analysis of intent, physical presence, and permanency of abode in each case. *Country Mutual Insurance Co. v. Peoples Bank*, 286 Ill. App. 3d 356, 359 (1997); *Coriasco*, 245 Ill. App. 3d at 971. The controlling factor is the intent of the party whose residency is in question, as evinced by that party's actions. *Farmers Automobile Insurance Ass'n v. Gitelson*, 344 Ill. App. 3d 888, 894 (2003). Although a person can have only one domicile at a time, a person may have multiple residences. *Coriasco*, 245 Ill. App. 3d at 971-72; *Cincinnati Insurance Co. v. Argubright*, 151 Ill. App. 3d 324, 330-31 (1986) (adult son was a resident of his parents' house despite evidence that he spent part of his time at an apartment located above the family-owned-

16

and-operated restaurant). However, "it is axiomatic that a person can only reside 'primarily' in one household at a time." *Gaudina*, 2014 IL App (1st) 131264, ¶ 25.

¶ 30    In this case, there remains a genuine issue of material fact regarding whether Blake "reside[d] primarily" with Winnie. Winnie acknowledged her telephone statement to State Farm's agent, revealing that Blake had been living with her for five months prior to the accident. Winnie also testified that, during that time period, Blake periodically stayed in her home and cleaned his laundry in her home. Likewise, Simcox testified that Blake had been living with Winnie, that Blake kept a dog at Winnie's residence, and that Blake had his own room at Winnie's residence. Nevertheless, Winnie had stated to the State Farm agent that Blake did not receive mail in her home, and Winnie testified that Blake kept no possessions in her home. Winnie also testified that during the same time frame, Blake stayed with Tanna two or three nights a week, "more than he stayed with anybody." The genuine issue of material fact regarding whether Blake "reside[d] primarily" with Winnie on the date of the accident rendered summary judgment inappropriate. Instead, the issue should be decided by a trier of fact. See *Pielet*, 2012 IL 112064, ¶ 53. Accordingly, we reverse the circuit court's order entering summary judgment in State Farm's favor, and we remand the cause for the circuit court to hear evidence regarding Blake's primary residence. See *id.* ¶ 28 ("mere filing of cross-motions for summary judgment does not establish that there is no issue of material fact, nor does it obligate a court to render summary judgment").

¶ 31                                     III. CONCLUSION

¶ 32    For the reasons stated, we reverse the circuit court's summary judgment order in favor of State Farm, and we remand the cause for further proceedings.

¶ 33    Reversed and remanded.

17

2019 IL App (5th) 180426

NO. 5-18-0426

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, | ) ) ) | Appeal from the Circuit Court of Marion County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 17-MR-48 |
| BRITTANY BIERMAN, as Special Administrator of the Estate of Blake Edward Miller, Deceased, | ) ) ) ) ) | Honorable Michael D. McHaney, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

**Opinion Filed:**     September 10, 2019

_____

**Justices:**        Honorable David K. Overstreet, P.J.

             Honorable Judy L. Cates, J., and
             Honorable James R. Moore, J.
             Concur

_____

**Attorney
for
Appellant**         Eric L. Terlizzi, 202 West Schwartz, Salem, IL 62881

_____

**Attorneys
for
Appellee**         Elizaveta Klementieva, Frank C. Stevens, Taylor Miller LLC, 175 North
             Franklin Street, Suite 400, Chicago, IL 60606

_____