2022 IL App (3d) 210001

Opinion filed June 27, 2022

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| ILLINOIS FARMERS INSURANCE COMPANY, | ) ) ) | Appeal from the Circuit Court of the 14th Judicial Circuit, Rock Island County, Illinois, |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | |
| COALTON GODWIN and ERIC PAI, as Administrator of the Estate of Jarred Pai, Deceased, | ) ) ) ) | Appeal No. 3-21-0001 Circuit No. 15-MR-691 |
| Defendants | ) ) | |
| (Eric Pai, Administrator of the Estate of Jarred Pai, Deceased, Defendant-Appellee). | ) ) | Honorable Mark A. VandeWiele, Judge, Presiding. |

JUSTICE HAUPTMAN delivered the judgment of the court, with opinion.
Justices Daugherity and Holdridge concurred in the judgment and opinion.

**OPINION**

¶ 1 Defendant Coalton Godwin and Jarred Pai were involved in a single-car accident that resulted in Jarred's death. Plaintiff, Illinois Farmers Insurance Company (Farmers), filed a second amended complaint for declaratory relief against, among others, Coalton and defendant, Eric Pai, as administrator of Jarred's estate. Farmers sought declarations, related to an exclusion to liability coverage and a duty to defend or indemnify Coalton in an underlying case, under an automobile insurance policy that was executed with Coalton and his mother. Farmers and Eric filed cross-motions for summary judgment. Summary judgment was granted for Eric. Farmers appeals.

I. BACKGROUND

¶ 3 On July 27, 2014, Coalton was driving a 1996 Jeep Grand Cherokee owned by his father, Bruce, in which Jarred was a passenger. Coalton and Jarred were returning to Illinois from a trip to New Mexico when they were involved in a single-car accident that resulted in Jarred's death.

¶ 4 Before the single-car accident, Farmers executed an automobile insurance policy with Coalton and his mother, Kellie, as named insureds. Coalton and Kellie's residential address was listed under their names in the automobile insurance policy. Coalton, Kellie, and Kellie's mother were listed as "your household drivers." The two vehicles described in the automobile insurance policy were a 2011 Ford Escape and a 1999 Jeep Wrangler, the latter of which was owned by Coalton. Neither Bruce nor his Jeep Grand Cherokee were identified in the automobile insurance policy. Pertaining to liability coverage and exclusions, the automobile insurance policy provided:

> "*Part I – Liability*
>
> *Coverage A – Bodily Injury*
>
> *Coverage B – Property Damage*
>
> We will pay *damages* for which any *insured person* is legally liable because of *bodily injury* to any person and/or *property damage* arising out of the ownership, maintenance or use of a *private passenger car*, *utility car*, or *utility trailer*.
>
> We will defend any civil claim or civil suit asking for these damages. We may settle when we consider it appropriate. We will not defend any suit or make additional payments after we have paid the limit of liability coverage shown in the Declarations.
>
> * * *
>
> *Exclusions*

This coverage does not apply to:

\* \* \*

12. *Bodily injury* or *property damage* arising out of the ownership, maintenance or use of any vehicle other than *your insured car*, which is owned by or furnished or available for regular use by you or a *family member*." (Emphases in original.)[1]

Under these quoted provisions, "family member" means "a person related to \*\*\* [an insured] by blood, marriage or adoption who is a resident of \*\*\* [the insured's] household."[2]

¶ 5          A. Farmers' Second Amended Complaint for Declaratory Relief

¶ 6          On June 20, 2018, Farmers filed a second amended complaint for declaratory relief against, among others, Coalton and Eric, as administrator of Jarred's estate.[3] Farmers alleged Jarred's estate filed a claim against Coalton under the automobile insurance policy, which it denied. Jarred's estate also allegedly initiated a separate lawsuit against 28 defendants, including Coalton, for Jarred's death in the single-car accident. Country Mutual, the insurer of the Jeep Grand Cherokee involved in the single-car accident, was allegedly defending Coalton in that underlying case. Farmers requested declarations that (1) it had no duty to defend or indemnify Coalton in

---

[1]An "other insurance" provision states "this Policy is primary for the car listed in the Declarations[ ] \*\*\* but for any other vehicle the coverage is excess over any other liability insurance policy or bond that applies to the same *accident* or *occurrence*." (Emphases in original.)

[2]"Your insured car" means any private passenger car or utility car described in the policy declarations, a replacement vehicle, a substitute vehicle, a rental vehicle, an additional vehicle, and a utility trailer owned by an insured or attached to an insured's vehicle. "Private passenger car" means "a four wheel land motor vehicle of the private passenger or station wagon type[,] actually licensed for use upon public highways[,] \*\*\* [and] a motor home[ ] \*\*\* not used for business purposes."

[3]A default judgment was previously entered against Coalton on July 6, 2016, with respect to the original complaint for declaratory relief filed by Farmers. Coalton is not a party to the present appeal.

3

litigation arising from the single-car accident and (2) Coalton's use of Bruce's Jeep Grand Cherokee was excluded from coverage under the automobile insurance policy.

¶ 7                           B. Cross-Motions for Summary Judgment

¶ 8         On March 27 and May 7, 2020, Farmers and Eric filed cross-motions for summary judgment. The parties agreed there was no genuine issue of material fact in this case. At the time of the single-car accident, Coalton's parents, Kellie and Bruce, were divorced. Coalton resided with each parent in their separate households on a regular alternating basis. The 1999 Jeep Wrangler referenced in the automobile insurance policy—not Bruce's Jeep Grand Cherokee—was Coalton's primary vehicle. The Jeep Grand Cherokee was the primary vehicle of another resident of Bruce's household. Coalton could use the Jeep Grand Cherokee, after receiving his father's permission, when residing at Bruce's house. Although he usually drove his Jeep Wrangler for personal use, Coalton could use the Jeep Grand Cherokee if his request was reasonable and that vehicle was available for use. At Bruce's request, Coalton also sometimes used the Jeep Grand Cherokee to run errands for the family and to help with his younger siblings, who required the use of car seats in the Jeep Grand Cherokee. At best, the parties suggested that Coalton used Bruce's Jeep Grand Cherokee approximately once a week.

¶ 9         In light of these undisputed material facts, Farmers argued the Jeep Grand Cherokee, which was involved in the single-car accident, was not the vehicle owned and insured by Coalton under the automobile insurance policy. The Jeep Grand Cherokee was instead owned and furnished by Bruce and insured by Country Mutual. Under the relevant exclusion to liability coverage, Farmers asserted Bruce is Coalton's father and a resident of Coalton's household, as required by the definition of "family member." Also, Farmers maintained the Jeep Grand Cherokee was available for Coalton's regular use. Therefore, Farmers argued Bruce's Jeep Grand Cherokee was excluded

4

from liability coverage under the automobile insurance policy. As such, Farmers also argued it had no duty to defend or indemnify Coalton in the underlying case.

¶ 10    By contrast, Eric argued, although the Jeep Grand Cherokee was owned and furnished by Bruce, Bruce was not a resident of Coalton's household under the relevant definition of "family member." Eric argued the "household" referenced in the automobile insurance policy was that of only Coalton and Kellie. Further, Eric argued Bruce's Jeep Grand Cherokee was not available for Coalton's regular use. According to Eric, Coalton's use of the Jeep Grand Cherokee was "subject to extensive limitations[ ] in both time and scope of use." Eric asserted the Jeep Grand Cherokee was primarily driven by another resident of Bruce's household. In addition, at least 50% of the time, Coalton had no access to the Jeep Grand Cherokee because he was residing with Kellie. Despite owning and primarily driving his Jeep Wrangler, Coalton could obtain Bruce's permission to use the Jeep Grand Cherokee, but any use of that vehicle by Coalton was limited, temporary, casual, and upon Bruce's request or grant of permission. For these reasons, Eric argued Bruce's Jeep Grand Cherokee was not excluded from liability coverage under the automobile insurance policy.

¶ 11                                C. Judgment of the Circuit Court

¶ 12    On August 6, 2020, the circuit court entered an order on the parties' cross-motions for summary judgment. The circuit court subsequently clarified its order on December 4, 2020, in response to a motion to reconsider filed by Farmers. For the sake of conciseness, we simultaneously discuss the relevant findings by the circuit court in those similar orders.

¶ 13    Initially, the circuit court noted that the parties agreed there was no genuine issue of material fact. As such, each party claimed summary judgment was proper as a matter of law. Thereafter, the circuit court found, in the context of a "family member" under the automobile

5

insurance policy and the relevant exclusion to liability coverage, "the focus should be on Coalton's household." The circuit court noted that Coalton was the named insured who was in privity of contract with Farmers. Further, Coalton, Kellie, and Kellie's mother, but not Bruce, were listed as household drivers in the automobile insurance policy. The circuit court opined that Farmers recognized Coalton resided in Kellie's household. For these reasons, the circuit court found Bruce was not a resident of Coalton's household for purposes of the relevant exclusion to liability coverage stated in the automobile insurance policy.

¶ 14        Relating to Coalton's "regular use" of the Jeep Grand Cherokee, the circuit court noted that Coalton did not carry a spare key to that vehicle. A spare key was instead kept at Bruce's house for other drivers. Further, while the Jeep Wrangler was Coalton's primary vehicle, Coalton occasionally used the Jeep Grand Cherokee "to run errands and transport his siblings," who utilized car seats in that vehicle. The circuit court found those occasional uses of the Jeep Grand Cherokee were "for a specific purpose or task and at the direction or with the explicit permission of Bruce." Also, on the date of the single-car accident, Bruce granted Coalton permission to use the Jeep Grand Cherokee because Coalton's Jeep Wrangler was "set up for off-road use and not the best choice for travel." For these reasons, the circuit court found Bruce's Jeep Grand Cherokee was not excluded from liability coverage under the automobile insurance policy.

¶ 15        By extension, the circuit court found Farmers had a duty to defend and indemnify Coalton in the underlying case. The circuit court noted that Farmers asserted an excess liability coverage argument for the first time in its motion to reconsider. Although Farmers alleged Country Mutual was defending Coalton in the underlying case, it did not name Country Mutual as a party to this lawsuit. Therefore, the circuit court found it lacked jurisdiction to address whether Farmers or Country Mutual held the primary automobile insurance policy in this case.

6

¶ 16    On December 31, 2020, Farmers filed a timely notice of appeal.

¶ 17                              II. ANALYSIS

¶ 18    On appeal, the sole issue presented is whether the circuit court, after construing the automobile insurance policy and considering the undisputed material facts of record, erred by granting summary judgment for Eric and against Farmers. When cross-motions for summary judgment are filed, the parties agree that only a question of law is presented and invite the circuit court to decide the issues presented based upon the record. *Pielet v. Pielet*, 2012 IL 112064, ¶ 28 (citing *Allen v. Meyer*, 14 Ill. 2d 284 (1958)). Such motions are governed by section 2-1005 of the Code of Civil Procedure (735 ILCS 5/2-1005 (West 2020)) and are granted only "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See *id.* § 2-1005(c); *Pielet*, 2012 IL 112064, ¶ 29. Our review of the circuit court's decision on cross-motions for summary judgment is *de novo*. See *Pielet*, 2012 IL 112064, ¶ 30; see also *Kopier v. Harlow*, 291 Ill. App. 3d 139, 141 (1997) ("[T]he construction of an insurance policy is a question of law that this court determines *de novo*.").

¶ 19    A court construes the language of an insurance policy according to the general rules of contract interpretation. See *Menard, Inc. v. Country Preferred Insurance Co.*, 2013 IL App (3d) 120340, ¶ 18 (citing *Hobbs v. Hartford Insurance Co. of the Midwest*, 214 Ill. 2d 11, 17 (2005)). When doing so, a court's primary objective is to ascertain and give effect to the parties' intent, as expressed by the language of the insurance policy. *Id.* (citing *Valley Forge Insurance Co. v. Swiderski Electronics, Inc.*, 223 Ill. 2d 352, 362 (2006)). A court should construe the insurance policy as a whole and effectuate each provision. See *id.* (citing *Swiderski Electronics*, 223 Ill. 2d at 362). If the language of the insurance policy is unambiguous, then a court discerns the parties'

7

intent from that language without resorting to other rules of construction, unless doing so would violate public policy. *Kopier*, 291 Ill. App. 3d at 141 (citing *Vanek v. Illinois Farmers Insurance Co.*, 268 Ill. App. 3d 731, 735 (1994)). If the language of the insurance policy is ambiguous, such that it is reasonably susceptible to more than one meaning, then a court construes that language strictly against the insurer. See *Menard*, 2013 IL App (3d) 120340, ¶ 18 (citing *Central Illinois Light Co. v. Home Insurance Co.*, 213 Ill. 2d 141, 153 (2004)). Cases of insurance policy construction turn on the particular language used by the parties. *Kopier*, 291 Ill. App. 3d at 143.

¶ 20    To review, the automobile insurance policy plainly provides liability coverage "arising out of *** [Coalton's] use of a *private passenger car*." (Emphasis in original.) Just as plainly, the automobile insurance policy excludes coverage for bodily injury or property damage arising out of Coalton's use of any vehicle other than his insured car, "which is owned by or furnished *** by *** a *family member*." (Emphasis in original.) "Family member" means "a person related to *** [Coalton] by blood, marriage or adoption who is a resident of *** [Coalton's] household." "Resident of household" has no fixed meaning, so a reasonable interpretation of that phrase requires a case-by-case analysis of the intent, physical presence, and permanency of abode of the person in question. See *State Farm Fire & Casualty Co. v. Martinez*, 384 Ill. App. 3d 494, 499-500 (2008); accord *State Farm Mutual Automobile Insurance Co. v. Bierman*, 2019 IL App (5th) 180426, ¶ 29. Intent, as evinced from that person's actions, is the controlling factor. See *Martinez*, 384 Ill. App. 3d at 500; accord *Bierman*, 2019 IL App (5th) 180426, ¶ 29.

¶ 21    Here, we agree that Bruce was not a resident of Coalton's household, *i.e.*, the household located at the address listed under Coalton and Kellie's name in the automobile insurance policy. The automobile insurance policy specifically identifies the named insureds, namely, Coalton and Kellie, their vehicles, and the street address at which they reside. The automobile insurance policy

8

in no way identifies Bruce or Bruce's address, where Coalton resides roughly 50% of the time. In our view, when this automobile insurance policy was executed, it was the intent of Farmers, Kellie, and Coalton to insure the specific vehicles owned by the named insureds, the named insureds themselves, and any other family member residing at the listed street address, such as Kellie's mother. Obviously, Bruce had no physical presence, permanency of abode, or intent to reside at that address. See *Martinez*, 384 Ill. App. 3d at 499-500; *Bierman*, 2019 IL App (5th) 180426, ¶ 29. As such, we construe "family member," as used in the exclusion to liability coverage, to mean those persons related to Coalton by blood, marriage, or adoption who are residents of the household specifically identified by the street address listed in the automobile insurance policy. Bruce is not a resident family member of that household. Thus, the exclusion to liability coverage cannot apply on the basis that Bruce owned or furnished the Jeep Grand Cherokee involved in the single-car accident at issue in this case.

¶ 22        As a result of this conclusion, the present appeal turns on whether Bruce's Jeep Grand Cherokee was "available for regular use by" Coalton. This question is untethered from Bruce's status as a nonresident family member. The relevant exclusion to liability coverage applies if the claimed bodily injury or property damage arose out of Coalton's use of any vehicle other than his insured car, "which is *** available for regular use by" Coalton. For the reasons discussed below, we hold Bruce's Jeep Grand Cherokee was not "available for regular use by" Coalton.

¶ 23        A claimant under an automobile insurance policy has the burden of proving that liability coverage is not excluded by the driver's regular use of the vehicle. See *Knack v. Phillips*, 134 Ill. App. 3d 117, 120 (1985) (citing *Continental National American Group v. Vaicunas*, 26 Ill. App. 3d 835, 840 (1975)). "Regular use" is not subject to an absolute definition. See *State Farm Mutual Automobile Insurance Co. v. Differding*, 69 Ill. 2d 103, 107 (1977); accord *Knack*, 134 Ill. App.

9

3d at 121. What constitutes "regular use" depends on the facts and circumstances of each case. *Differding*, 69 Ill. 2d at 107; accord *Auto Owners Insurance Co. v. Miller*, 138 Ill. 2d 124, 129 (1990); *Knack*, 134 Ill. App. 3d at 121. Further, the phrase "available for *** regular use" depends not on "actual use[ ] but on availability" of regular use. (Emphasis omitted.) See *Ryan v. State Farm Mutual Automobile Insurance Co.*, 397 Ill. App. 3d 48, 51 (2009); see also *State Farm Mutual Automobile Insurance Co. v. Berke*, 123 Ill. App. 2d 455, 460 (1970) (stating, "if the automobile is available for regular use it is not determinative how often it is in fact used"). Also, a vehicle need not be available for "unrestricted use" for there to be "regular use." See *Economy Fire & Casualty Co. v. Gorman*, 84 Ill. App. 3d 1127, 1129 (1980).

¶ 24      As a general matter, insurance policies with exclusionary provisions based on "regular use" provide coverage to an insured for the isolated, casual, and unauthorized use of vehicles, but exclude coverage for the frequent, habitual, or principal use of vehicles. *Miller*, 138 Ill. 2d at 129-30; accord *Ryan*, 397 Ill. App. 3d at 51; see also *Knack*, 134 Ill. App. 3d at 121 (stating, "the words 'regular use' suggest a principal use as distinguished from a casual or incidental use, or an uninterrupted normal use for all purposes, without limitation as to use"). That way, insurers are not subjected to additional risk without an appropriate premium. *Miller*, 138 Ill. 2d at 129-30. "Regular use" exclusions have been more broadly described as follows:

> " '[T]he exclusion of cars furnished for regular use to the insured or a member of his household would seem to indicate the intention of the company to protect itself from a situation where an insured could pay for one policy and be covered by the insurance in driving any car that he decided to use whether owned by him or members of his family, or cars that had been furnished for his regular use; in other words, cars under his control that he could use at will and might use often. Without some such exclusion

10

it is obvious that the company might lose premiums and also that the hazard under the insurance would be increased. It is evident that the purpose on the part of the company in extending the driver's regular insurance without the payment of any additional premiums would apply to the occasional driving of cars other than his own, but would be inapplicable to an automobile furnished to the insured for his regular use.' " *Auto-Owners Insurance Co. v. Stubban*, 371 Ill. App. 3d 513, 515-16 (2007) (quoting *Rodenkirk v. State Farm Mutual Automobile Insurance Co.*, 325 Ill. App. 421, 433 (1945)).

Accord *Knack*, 134 Ill. App. 3d at 121-22; *Vaicunas*, 26 Ill. App. 3d at 838.

¶ 25     Here, Bruce's Jeep Grand Cherokee was available for Coalton's use when the other resident of Bruce's household, *i.e.*, the primary driver of the Jeep Grand Cherokee, was not using that vehicle. However, even when the primary driver of the Jeep Grand Cherokee was not using that vehicle, Coalton's ability to use the Jeep Grand Cherokee was contingent upon Coalton residing with Bruce at the time, Coalton making a reasonable request, and Bruce's grant of permission. Coalton actually used Bruce's Jeep Grand Cherokee approximately once a week.

¶ 26     Under these undisputed material facts, we conclude the availability of the Jeep Grand Cherokee for use by Coalton was not so frequent, habitual, or of a principal nature to be deemed "regular" as a matter of law. See *Miller*, 138 Ill. 2d at 129-30; *Ryan*, 397 Ill. App. 3d at 51, 53 (finding patrol vehicle occupied by the plaintiff during an accident was available for regular use, where patrol vehicle was one of a pool of patrol vehicles available for the plaintiff's use while on duty as a police officer); *Knack*, 134 Ill. App. 3d at 121-23 (finding vehicle was not available for regular use of the defendant, where the grant of use was for an indefinite period of time to travel to a part-time job during the workweek, contingent upon another's nonuse, and regarded as

11

temporary and casual); compare *State Farm Mutual Automobile Insurance Co. v. Dreher*, 190 Ill. App. 3d 182, 184-85 (1989) (reversing a judgment that a vehicle was not available for regular use, where the defendant used the vehicle "two to three times a week, sometimes daily," without restrictions or the need to obtain permission, for four to five months and with 24-hour access) with *Vaicunas*, 26 Ill. App. 3d at 838-40 (holding vehicle was available for regular use, where the use was granted without limitation for as long as was needed). As such, the bodily injury or property damage resulting from the single-car accident did not arise out of Coalton's use of a vehicle that was "available for [his] regular use." Instead, the bodily injury or property damage from the single-car accident arose out of Coalton's use of a vehicle that was merely available for his casual, infrequent, or isolated use. See *Miller*, 138 Ill. 2d at 129-30; *Ryan*, 397 Ill. App. 3d at 51; *Knack*, 134 Ill. App. 3d at 121. For these reasons, we conclude Bruce's Jeep Grand Cherokee is not excluded from liability coverage under the automobile insurance policy.

¶ 27        Relatedly, we conclude Farmers' arguments on the issue of the duty to defend Coalton in the underlying litigation, based on Eric's standing or the language in the automobile insurance policy pertaining to excess liability coverage, are forfeited. Farmers failed to assert those arguments before the filing of its motion to reconsider. See *Zander v. Carlson*, 2020 IL 125691, ¶ 34 (stating, "[a]rguments raised for the first time in a motion for reconsideration in the circuit court are forfeited"). However, as an aside, we note that Coalton has previously been defaulted in this case and the record indicates he is receiving a defense from Country Mutual. Therefore, at this juncture, it is unnecessary to opine on an issue that exists between Coalton and Farmers. For these reasons, we decline to address the merits of the duty to defend issue in this appeal.

¶ 28                                    III. CONCLUSION

¶ 29        The judgment of the circuit court of Rock Island County is affirmed.

¶ 30        Affirmed.

2022 IL App (3d) 210001

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Rock Island County, No. 15-MR-691; the Hon. Mark A. VandeWiele, Judge, presiding. |
| **Attorneys for Appellant:** | Danny L. Worker, Mary F. Sitko, and Abigail C. Horvat, of Lewis Brisbois Bisgaard & Smith LLP, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Robert D. Fink, of Collison Law Offices, Ltd., of Chicago, for appellee. |